FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

# Feb 15, 2022

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CASEY H.,[1] | No. 4:20-cv-05134-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND CLOSING FILE |
| vs. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[2] | |
| | ECF Nos. 18, 19 |
| Defendant. | |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment.  ECF Nos. 18, 19.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 18, and grants Defendant's motion, ECF No. 19.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

ORDER - 2

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

ORDER - 3

1  substantial gainful work which exists in the national economy." 42 U.S.C. §

2  423(d)(2)(A).

3      The Commissioner has established a five-step sequential analysis to

4  determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

5  404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's

6  work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in

7  "substantial gainful activity," the Commissioner must find that the claimant is not

8  disabled. 20 C.F.R. § 404.1520(b).

9      If the claimant is not engaged in substantial gainful activity, the analysis

10  proceeds to step two. At this step, the Commissioner considers the severity of the

11  claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers

12  from "any impairment or combination of impairments which significantly limits

13  [his or her] physical or mental ability to do basic work activities," the analysis

14  proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment

15  does not satisfy this severity threshold, however, the Commissioner must find that

16  the claimant is not disabled. *Id.*

17      At step three, the Commissioner compares the claimant's impairment to

18  severe impairments recognized by the Commissioner to be so severe as to preclude

19  a person from engaging in substantial gainful activity. 20 C.F.R. §

20  404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the

ORDER - 4

1  enumerated impairments, the Commissioner must find the claimant disabled and

2  award benefits.  20 C.F.R. § 404.1520(d).

3      If the severity of the claimant's impairment does not meet or exceed the

4  severity of the enumerated impairments, the Commissioner must pause to assess

5  the claimant's "residual functional capacity."  Residual functional capacity (RFC),

6  defined generally as the claimant's ability to perform physical and mental work

7  activities on a sustained basis despite his or her limitations, 20 C.F.R. §

8  404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

9      At step four, the Commissioner considers whether, in view of the claimant's

10  RFC, the claimant is capable of performing work that he or she has performed in

11  the past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is

12  capable of performing past relevant work, the Commissioner must find that the

13  claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of

14  performing such work, the analysis proceeds to step five.

15      At step five, the Commissioner considers whether, in view of the claimant's

16  RFC, the claimant is capable of performing other work in the national economy.

17  20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner

18  must also consider vocational factors such as the claimant's age, education, and

19  past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the

20  Commissioner must find that the claimant is not disabled.  20 C.F.R. §

404.1520(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On September 13, 2016, Plaintiff applied for Title II disability insurance benefits alleging a disability onset date of September 2, 2015.  Tr. 17, 77, 162-70. The application was denied initially and on reconsideration.  Tr. 93-95, 97-99. Plaintiff appeared before an administrative law judge (ALJ) on May 10, 2019.  Tr. 42-65.  On June 19, 2019, the ALJ denied Plaintiff's claim.  Tr. 14-33.

At step one of the sequential evaluation process, the ALJ found Plaintiff, who met the insured status requirements through December 31, 2021, has not engaged in substantial gainful activity since September 2, 2015.  Tr. 19.  At step two, the ALJ found that Plaintiff has the following severe impairment: seizure disorder.  Tr. 19.

ORDER - 6

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 21. The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [H]e can never climb ladders, ropes, or scaffolds; he should not be exposed to moving or dangerous machinery or unprotected heights; and he should not drive a motor vehicle.

Tr. 21-22.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 26. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as cashier II, electronics worker, and office helper. Tr. 27. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of September 2, 2015, through the date of the decision. Tr. 28.

On June 11, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

ORDER - 7

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated Plaintiff's symptom claims;

2.  Whether the ALJ properly evaluated lay witness evidence;

3.  Whether the ALJ properly evaluated the medical opinion evidence;

4.  Whether the ALJ conducted a proper step-three analysis; and

5.  Whether the ALJ conducted a proper step-five analysis.

ECF No. 18 at 6.

## DISCUSSION

### A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims.  ECF No. 18 at 16-20.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  Social Security Ruling (SSR) 16–3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).  "The claimant is not required to show

ORDER - 8

that [the claimant's] impairment could reasonably be expected to cause the severity

of the symptom [the claimant] has alleged; [the claimant] need only show that it

could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*,

572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

omitted).  General findings are insufficient; rather, the ALJ must identify what

symptom claims are being discounted and what evidence undermines these claims.

*Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v.

Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

explain why it discounted claimant's symptom claims)).  "The clear and

convincing [evidence] standard is the most demanding required in Social Security

cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.

Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting

effects of a claimant's symptoms include: 1) daily activities; 2) the location,

duration, frequency, and intensity of pain or other symptoms; 3) factors that

precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

ORDER - 9

side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; 5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; 6) any measures other than treatment

an individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning an individual's functional limitations and restrictions due to

pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

404.1529(c).  The ALJ is instructed to "consider all of the evidence in an

individual's record," to "determine how symptoms limit ability to perform work-

related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of his

symptoms were not entirely consistent with the evidence.  Tr.  22.  Plaintiff

testified that "[i]t goes back and forth," but he agreed that "on average" it was

"accurate" to say he typically has generalized tonic clonic seizure activity once per

month, and his seizures leave him needing to recover for one or two days.  Tr. 51-

53.  He testified he also sometimes experiences "staring off spells," and side

effects of his medications including drowsiness, memory loss, dizziness, and

double vision.  Tr. 53-56.

ORDER - 10

1        *1. Activities of Daily Living*

2        The ALJ found Plaintiff's symptom claims were inconsistent with Plaintiff's

3    level of functioning and activities of daily living.  Tr. 23.  The ALJ may consider a

4    claimant's activities that undermine reported symptoms.  *Rollins v. Massanari*, 261

5    F.3d 853, 857 (9th Cir. 2001).  If a claimant can spend a substantial part of the day

6    engaged in pursuits involving the performance of exertional or non-exertional

7    functions, the ALJ may find these activities inconsistent with the reported

8    disabling symptoms.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*,

9    674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to

10    be eligible for benefits, the ALJ may discount a claimant's symptom claims when

11    the claimant reports participation in everyday activities indicating capacities that

12    are transferable to a work setting" or when activities "contradict claims of a totally

13    debilitating impairment."  *Molina*, 674 F.3d at 1112-13.

14        The ALJ found Plaintiff engaged in multiple activities throughout the

15    relevant time period that were inconsistent with his allegations of disabling

16    limitations.  Tr. 23.  The ALJ noted that though unable to drive, Plaintiff reported

17    he was independent with personal care tasks, takes care of his daughter, mother,

18    and pets, does household chores and yard work, including mowing the lawn, goes

19    shopping once per week, prepares his own meals, handles finances, and spends

20    time with friends and family multiple times per week.  *Id.*  Plaintiff reported he

ORDER - 11

1    assists his wife with his caring for his mother, who has paraplegia and cancer.  *Id.*

2    Plaintiff also reported reading, watching television, and working on cars at home

3    daily.  Tr. 208.  The ALJ concluded that despite "occasional unpredictable

4    seizures, [Plaintiff] is quite functional."  *Id.*  The fact Plaintiff can often engage in

5    the activities noted by the ALJ multiple times per week conflicts with Plaintiff's

6    testimony that he experiences unpredictable seizures that require him to rest for

7    several days thereafter.  This was a clear and convincing reason, supported by

8    substantial evidence, to reject Plaintiff's symptom claims.

9          *2.  Failure to Follow Treatment Recommendations*

10         The ALJ found Plaintiff's symptom claims were inconsistent with his failure

11   to follow treatment recommendations.  Tr. 23-24.  "A claimant's subjective

12   symptom testimony may be undermined by an unexplained, or inadequately

13   explained, failure to . . . follow a prescribed course of treatment."  *Trevizo v.*

14   *Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017) (citations omitted).  An ALJ cannot

15   cast doubt on a plaintiff's subjective testimony based on one instance of

16   noncompliance without "evaluat[ing] that claim or find[ing] it to be unbelievable."

17   *Id*.

18         The ALJ found Plaintiff continued to smoke cigarettes and drink a

19   significant amount of alcohol, despite his neurologist's recommendation that he

20   discontinue both smoking and drinking alcohol.  Tr.  23-24.  Plaintiff testified that

ORDER - 12

he uses alcohol and on occasion will drink a six-pack, but not daily.  Tr. 58.

Medical records indicate Plaintiff continued drinking alcohol during the relevant

period, as much as six to 12 beers per day, and an examiner noted Plaintiff tends to

minimize his alcohol and marijuana use.  Tr. 264, 383, 401.  Plaintiff reported

smoking one pack of cigarettes per day, despite ongoing encouragement from

medical providers to stop tobacco use.  Tr. 24 (citing, e.g., Tr. 264-65, 269-70).

On this record, the ALJ reasonably found Plaintiff failed to follow treatment

recommendations.  This was a clear and convincing reason to reject Plaintiff's

symptom claims.

   3. *Improvement with Treatment*

   The ALJ found that Plaintiff's symptom claims were inconsistent with his

improvement with treatment.  Tr. 23-24.  The effectiveness of treatment is a

relevant factor in determining the severity of a claimant's symptoms.  20 C.F.R. §

404.1529(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006

(9th Cir. 2006); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a

favorable response to treatment can undermine a claimant's complaints of

debilitating pain or other severe limitations).  The medical records demonstrate

Plaintiff's seizures have decreased in frequency with treatment, and his seizures

have been documented as "well-controlled."  Tr. 23, 284-85.  There are periods

where Plaintiff went several months without any reported seizures, and in 2017, he

ORDER - 13

went eight months without the need for treatment for his seizures, while he had a

gap from October 2017 through April 2019 during which he did not seek treatment

for his seizures. Tr. 24. Plaintiff reported having had only three seizures in a year.

*Id.* (citing Tr. 407). The ALJ noted that Plaintiff had an increase in seizures during

periods when he did not take his medication. Tr. 23-24 (citing Tr. 391). On this

record, the ALJ reasonably found Plaintiff's seizure disorder, when treated, is not

as severe as Plaintiff alleges. This was a clear and convincing reason, supported

by substantial evidence, to reject Plaintiff's symptom claims.

### 4. Inconsistency with Medical Record as a Whole

The ALJ found Plaintiff's symptom claims were inconsistent with the

medical record as a whole. Tr. 23. An ALJ may reject limitations "unsupported

by the record as a whole." *Batson v. Comm'r of the Soc. Sec. Admin*., 359 F.3d

1190, 1195 (9th Cir. 2003). After reviewing the medical evidence, the ALJ

concluded the record reflected Plaintiff's seizures were not as frequent as alleged,

that Plaintiff's seizures were "brief" in duration, and Plaintiff "recover[s] quickly

after these episodes." Tr. 23. While Plaintiff alleged having seizures

approximately once per month, sometimes multiple seizures in a month, Plaintiff

reported to his neurologist that he had only three seizures in a year. Tr. 22, 407.

Most of Plaintiff's reported seizures lack any objective documentation, as he was

not seen for treatment for the reported seizures. Tr. 24, 391. There are also

1    multiple periods during which Plaintiff did not seek any treatment for his seizures

2    despite his allegation that he was experiencing seizures as often as multiple times

3    per month.  Tr. 23-24.  As discussed *supra*, the ALJ reasonably found Plaintiff had

4    improvement with treatment and that his activities of daily living are inconsistent

5    with his allegations.  On this record, the ALJ reasonably found Plaintiff's symptom

6    claims were inconsistent with the record as a whole.  This was a clear and

7    convincing reason, supported by substantial evidence, to reject plaintiff's claims.

8    Plaintiff is not entitled to remand on these grounds.

9    **B. Lay Witness**

10    Plaintiff contends the ALJ erred in his consideration of the lay witness

11    statements of Plaintiff's wife, Michele Judkins, who has been married to Plaintiff

12    since prior to the onset of his seizures.  ECF No. 18 at 15-16; Tr. 212.  An ALJ

13    must consider the statement of lay witnesses in determining whether a claimant is

14    disabled.  *Stout v. Comm'r of Soc. Sec. Admin*., 454 F.3d 1050, 1053 (9th Cir.

15    2006).  Lay witness evidence cannot establish the existence of medically

16    determinable impairments, but lay witness evidence is "competent evidence" as to

17    "how an impairment affects [a claimant's] ability to work."  *Id*.; 20 C.F.R. §

18    404.1513; *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993)

19    ("[F]riends and family members in a position to observe a claimant's symptoms

20    and daily activities are competent to testify as to her condition.").  If a lay witness

ORDER - 15

statement is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill*, 12 F.3d at 919).

On October 25, 2016, Ms. Judkins provided a third-party function report along with a seizure questionnaire. Tr. 212-21. Ms. Judkins stated that Plaintiff's seizures impact his ability to work because they occur randomly, Plaintiff's medication causes fatigue, he has memory deficits, and multiple episodes have occurred while under the stress of attempting to work. Tr. 212. She stated that Plaintiff requires help with some tasks after having a seizure. Tr. 213. As to the frequency of seizures in the previous 12 months, she indicated Plaintiff had experienced nine seizures that she was aware of. Tr. 220. On June 21, 2017, Ms. Judkins provided another statement stating that Plaintiff had attempted work but cannot hold a job due to the unpredictability of his seizures which occurred while attempting to work. Tr. 243. She also indicated that increased level of medication causes side effects of drowsiness, double vision and confusion. *Id*. Finally, Ms. Judkins provided another statement dated April 29, 2019, stating that every two to three months, Plaintiff will have a bad week and experience three to five seizures, and then be weak for several days. Tr. 258. She stated Plaintiff also experiences times when his eyes are open, but he "blank[s] out" and is not respondent. Tr. 258. Ms. Judkins also reported that Plaintiff sleeps for two to four hours following his

morning regiment of medication.  Tr. 258.  The ALJ gave limited weight the statements of Ms. Judkins regarding "the severity and limiting effects of seizures." Tr. 26.

First, the ALJ found Ms. Judkins' statements generally "reflect the allegations of the claimant, which are not fully consistent with the record as a whole."  Tr. 26.  Where the ALJ gives clear and convincing reasons to reject a claimant's testimony, and where a lay witness's testimony is similar to the claimant's subjective complaints, the reasons given to reject the claimant's testimony are also germane reasons to reject the lay witness testimony.  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009); *see also Molina*, 674 F.3d at 1114 ("[I]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness").  Ms. Judkins' statements largely repeat Plaintiff's symptom claims.  As the ALJ gave clear and convincing reasons to reject Plaintiff's claims, as discussed *supra*, this was a germane reason to reject Ms. Judkins' statement.

Second, the ALJ found Ms. Judkins' statements were inconsistent with the objective medical evidence.  Tr. 26.  Inconsistency with the medical evidence is a germane reason for rejecting lay witness testimony.  *See Bayliss v. Barnhart,* 427 F.3d 1211, 1218 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir.

ORDER - 17

1    2001) (germane reasons include inconsistency with medical evidence, activities,

2    and reports).  The ALJ found Ms. Judkins' statements regarding the frequency of

3    Plaintiff's seizures were inconsistent with the medical records, which document

4    long periods of no seizures, and during the period when Ms. Judkins reported

5    Plaintiff had nine seizures, Plaintiff was only seen for a period during which he had

6    an increase in seizures due to not taking his medication, and then he was seen for

7    treatment for three additional seizures, which did not match the reported nine

8    seizures.  Tr. 26.  This was a germane reason to reject Ms. Judkins' statements.

9    Plaintiff is not entitled to remand on these grounds.

10    **C. Medical Opinion Evidence**

11        Plaintiff contends the ALJ erred in his consideration of the April 2019

12    opinion of Paulo Cancado, M.D.  ECF No. 18 at 9-10.

13        There are three types of physicians: "(1) those who treat the claimant

14    (treating physicians); (2) those who examine but do not treat the claimant

15    (examining physicians); and (3) those who neither examine nor treat the claimant

16    [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

17    *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

18    Generally, a treating physician's opinion carries more weight than an examining

19    physician's, and an examining physician's opinion carries more weight than a

20    reviewing physician's.  *Id.* at 1202.  "In addition, the regulations give more weight

ORDER - 18

to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss,* 427 F.3d at 1216. "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

On April 4, 2019, Dr. Cancado, a treating provider, opined that Plaintiff's seizure disorder causes unpredictable loss of consciousness and is unlikely to ever be 100 percent controlled; Plaintiff suffers from medication side effects including visual disturbance and sometimes double vision; it is more probable than not that

ORDER - 19

1    Plaintiff would miss work due to his seizure disorder because "if he has a seizure

2    he may not be able to work for a certain period of time"; and Plaintiff is limited to

3    light work.  Tr. 397-98.  Dr. Cancado stated the number of days Plaintiff would

4    miss per month was "unknown."  Tr. 398.  Due to the unpredictable nature of

5    Plaintiff's seizures and potential impact to him and others, Dr. Cancado opined

6    "his employability is very limited."  Tr. 399.  The ALJ accorded this opinion

7    partial weight.  Tr. 25-26.  As the opinion is contradicted by the opinions of State

8    agency consultants Alnoor Virji, M.D., Tr. 73-74, and Robert Bernandez-Fu, M.D.,

9    Tr. 84-85, the ALJ was required to give specific and legitimate reasons to reject

10   Dr. Cancado's opinion, *see Bayliss*, 427 F.3d at 1216.

11        First, the ALJ found a portion of Dr. Cancado's opinion addressed an issue

12   reserved to the Commissioner.  Tr. 26.  A statement by a medical source that a

13   claimant is "unable to work" is not a medical opinion and is not due "any special

14   significance."  20 C.F.R. § 404.1527(d).  Nevertheless, the ALJ is required to

15   consider medical source opinions about any issue, including issues reserved to the

16   Commissioner, by evaluating the opinion in light of the evidence in the record and

17   applying the applicable factors.  SSR 96-5p at *2-3.  The ALJ considered Dr.

18   Cancado's opinion that Plaintiff's "employability is very limited," but gave the

19   opinion little weight, because it addresses an issue reserved to the Commissioner.

20   Tr. 26.  Dr. Cancado did not render an opinion on how many days per month

ORDER - 20

Plaintiff would miss work, nor did he set forth any other specific work-related limitations caused by Plaintiff's seizures beyond limiting Plaintiff to light work. Tr. 25-26, 397-98.  As Dr. Cancado opined Plaintiff's employability is limited, without any opinion on the functional limitations that cause the limited employability, the ALJ reasonably rejected the opinion as addressing an issue reserved to the Commissioner.

Second, the ALJ found Dr. Cancado's opinion is inconsistent with the objective medical evidence.  Tr. 26.  Relevant factors when evaluating a medical opinion include the amount of relevant evidence that supports the opinion and the consistency of the medical opinion with the record as a whole.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  While Dr. Cancado opined Plaintiff's seizures are not 100 percent controllable and his employability is limited, the ALJ found the medical records do not document the number of seizures Plaintiff alleges, and the records demonstrate improvement with medication.  Tr. 23-26.  Plaintiff argues the fact that his reported number of seizures is inconsistent with the records is not a reason to reject Dr. Cancado's opinion, ECF No. 18 at 11, however Plaintiff did not seek treatment for many of his reported seizures as discussed herein, and there is therefore no objective evidence to substantiate his reported number of seizures; any opinion that Plaintiff has a disabling number of seizures would thus have to be based on

ORDER - 21

1   Plaintiff's self-reported number of seizures.  While Plaintiff argues the ALJ failed

2   to consider Plaintiff's medication side effect, *id.* at 12-13, the medical records

3   reflect Plaintiff reported no side effects at multiple appointments, Tr. 264, 275,

4   284, 364, 368, 372.  This was a specific and legitimate reason to reject Dr.

5   Cancado's opinion.

6        Third, the ALJ found Dr. Cancado's opinion is inconsistent with Plaintiff's

7   activities of daily living.  Tr. 26.  An ALJ may discount a medical source opinion

8   to the extent it conflicts with the claimant's daily activities.  *Morgan v. Comm'r of*

9   *Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).  As discussed *supra*, the

10  ALJ noted that Plaintiff reported he was independent with personal care tasks,

11  takes care of his daughter, mother, and pets, does household chores and yard work,

12  including mowing the lawn, goes shopping once per week, prepares his own meals,

13  handles finances, reads, watches television, works on cars, and spends time with

14  friends and family multiple times per week.  Tr. 23, 208.  Plaintiff argues his

15  activities are not inconsistent with Dr. Cancado's opinion, and Plaintiff alleges he

16  has one seizure per month when taking his medication as prescribed and he spends

17  most of the time in bed for one to two days after the seizure. ECF No. 18 at 12.

18  However, Plaintiff's reported activities include stating he goes outside daily, and

19  reads, watches television, and works on cars daily, and engages in multiple other

20  activities multiple times per week.  Tr. 207-08.

ORDER - 22

1    The ALJ's finding that Dr. Cancado's opinion is inconsistent with Plaintiff's

2    activities of daily living is supported by substantial evidence.  This was a specific

3    and legitimate reason to reject the opinion.  Plaintiff is not entitled to remand on

4    these grounds.

5    **D. Step Three**

6    Plaintiff contends that the ALJ erred by finding that Plaintiff's impairment

7    did not meet or equal Listing 11.02.  ECF No. 18 at 13-15.

8    At step three, the ALJ must determine if a claimant's impairments meet or

9    equal a listed impairment.  20 C.F.R. § 404.1520(a)(4)(iii).  The Listing of

10   Impairments "describes for each of the major body systems impairments [which

11   are considered] severe enough to prevent an individual from doing any gainful

12   activity, regardless of his or her age, education or work experience."  20 C.F.R. §

13   404.1525.  "Listed impairments are purposefully set at a high level of severity

14   because 'the listings were designed to operate as a presumption of disability that

15   makes further inquiry unnecessary.'"  *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th

16   Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).  "Listed

17   impairments set such strict standards because they automatically end the five-step

18   inquiry, before residual functional capacity is even considered."  *Kennedy*, 738

19   F.3d at 1176.  If a claimant meets the listed criteria for disability, she will be found

20   to be disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

1   "To meet a listed impairment, a claimant must establish that he or she meets

2   each characteristic of a listed impairment relevant to his or her claim." *Tackett*,

3   180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 404.1525(d). "To equal a

4   listed impairment, a claimant must establish symptoms, signs and laboratory

5   findings 'at least equal in severity and duration' to the characteristics of a relevant

6   listed impairment . . . ." *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting

7   20 C.F.R. § 404.1526(a)). "If a claimant suffers from multiple impairments and

8   none of them individually meets or equals a listed impairment, the collective

9   symptoms, signs and laboratory findings of all of the claimant's impairments will

10  be evaluated to determine whether they meet or equal the characteristics of any

11  relevant listed impairment." *Id*. However, "'[m]edical equivalence must be based

12  on medical findings," and "[a] generalized assertion of functional problems is not

13  enough to establish disability at step three.'" *Id*. at 1100 (quoting 20 C.F.R. §

14  404.1526(a)).

15      The claimant bears the burden of establishing her impairment (or

16  combination of impairments) meets or equals the criteria of a listed impairment.

17  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). "An adjudicator's

18  articulation of the reason(s) why the individual is or is not disabled at a later step in

19  the sequential evaluation process will provide rationale that is sufficient for a

20  subsequent reviewer or court to determine the basis for the finding about medical

ORDER - 24

1  equivalence at step 3."  SSR 17-2P, 2017 WL 3928306, at *4 (effective March 27,

2  2017).

3       To establish a disability under Listing 11.02, a claimant must present

4  evidence that she suffers from a certain type of seizure, occurring at certain

5  frequencies.  *See generally* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 11.02.  Listing

6  11.02A for generalized tonic-clonic seizures is met by documentation of a detailed

7  description of a typical seizure, occurring at least once a month for at least three

8  consecutive months despite adherence to prescribed treatment.  20 C.F.R. Pt. 404,

9  Subpt. P, App. 1 § 11.02A.  For the purpose of counting seizures, multiple seizures

10  occurring in a 24-hour period are counted as one seizure and a seizure occurring

11  during a period of non-adherence to prescribed treatment "without good reason" is

12  not counted.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.00H.

13       Here, the ALJ found that Plaintiff's impairments and combinations of

14  impairments did not meet or equal any listings, including Listing 11.02.  Tr. 21.

15  Plaintiff argues the ALJ provided "no analysis of the record evidence."  ECF No.

16  18 at 14.  However, the ALJ's decision was not devoid of analysis; he found that

17  the medical record does not document the frequency of seizures required to meet

18  the Listing.  Tr. 21.  Plaintiff has failed to cite evidence of record substantiating

19  that Plaintiff experiences seizures at the frequency level required for Listing 11.02.

20  Plaintiff's treatment record does not reflect Plaintiff experienced seizures at least

once a month for three consecutive months during periods of medical compliance. Consistent with this, Plaintiff's wife stated that "[e]very 2-3 months, he'll have a bad week and have 3-5 seizures." Tr. 258. Plaintiff's own estimation of his "average" of one per month does not suffice and is also inconsistent with the lay witness statement. No medical providers have opined that Plaintiff meets or equals a listing. Plaintiff has not met his burden in demonstrating his impairment meets or equals a listing. Plaintiff is not entitled to remand on these grounds.

## E. Step Five

Plaintiff contends the ALJ erred at step five because his findings were based on an improper RFC formulation. ECF No. 18 at 20-21. However, Plaintiff's argument is based entirely on the assumption that the ALJ erred in considering the medical opinion evidence and Plaintiff's symptom claims. *Id.* For reasons discussed throughout this decision, the ALJ's rejection of Plaintiff's symptom complaints, and consideration of the medical opinion evidence are legally sufficient and supported by substantial evidence. Thus, the ALJ did not err in finding Plaintiff capable of performing other work in the national economy based

on the hypothetical containing Plaintiff's RFC.  Plaintiff is not entitled to remand

on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the

ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Kilolo Kijakazi as

Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 19**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to

counsel, and **CLOSE THE FILE**.

DATED February 15, 2022.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 27